BRIDGET A. GIBBONS, Plaintiff, *v.* MICHAEL J. GIBBONS, Defendant.

Supreme Court, Special Term, Kings County, November 21, 1949.

*Louis L. Friedman* for plaintiff.

*Samuel Bresalier* for defendant.

F. E. JOHNSON, J.   After trial it is decided:

1. The defendant's conduct, because of frequent intoxication, warranted plaintiff in leaving him because her health and bodily safety, and that of their child, were in danger.

2. After a long period of self-support and exclusive custody of the child plaintiff brought this suit after placing the child in a school where visitation by the defendant was, in effect, impossible; the controversy, by writ, over the custody, indicates that plaintiff's main object in suing was to obtain sole custody and thwart visitation.

3. Her actions while living apart while self-supporting, warrant postponing alimony payments until an application is made hereafter, upon proper affidavits, to modify the judgment by fixing alimony.

4. The child will continue, until decided otherwise, upon proper application, to live in the school where she now is; modification thereof for vacations, etc., may be likewise applied for, or informally by consent.

5. The question of counsel fee, referred to the trial court by the motion justice should be referred to the Official Referee to hear and determine.

The recent decision of one of the official referees in forbearing to fix " punishment " for one in arrears of alimony, in deference to the decision in *Pawelek* v. *Pawelek* (266 App. Div. 711 [4th Dept.]), may require considering whether there is any obstacle to having the Official Referee use his discretion in fixing the fee

here because it involves the exercise of a special judicial function.

The judiciary article of the present Constitution is in its 1925 form so far as legislative power to " alter and regulate the jurisdiction and proceedings in law and in equity that " this court has heretofore exercised (N. Y. Const., art. VI, § 20); at the time of its adoption various statutes were in effect running back at least to 1911, which were consistent with it, and seemingly not disapproved. Since then no disapproval of them was voiced in the 1938 proposed form of section 22 of article VI. The language of the appropriate sections of the Judiciary Law and the decisions of our Appellate Division in construction thereof *prior to 1938* ought to be considered approved in view of the failure to make any constitutional change in that language in 1938 or legislative change since then.

The *Pawelek* case (*supra*, [1943]) construing sections 759, 770 and 772 of the Judiciary Law, drew the inference that when a contempt had been committed, not before the court but in respect to an *order* of a court or judge, sections 115, 116 and 117 did not permit sending to the official referee the factual and discretionary problem of " punishing " the alleged contempt of one who had failed, after service, to obey an order for the payment of alimony. It is true that these contempt sections seem to treat of procedure upon that particular problem, whereas the other referee sections are general in reference to factual or decision problems not related to contempts, but it seems quite plausible to say that the fundamental question, which is equally present in all such cases, is the *nature* of the power which the Legislature duly authorized the Appellate Division to give to the official referees.

The conduct of the People in the Legislature and in the 1938 Constitutional Convention, warrants saying that nothing that the Legislature has done since 1925 in the exercise of the power which the people gave it under section 20 of article VI has been repudiated or disapproved, and also that what has been done has been tacitly approved, and what has been decided by appellate courts before 1938 on these problems has been silently approved.

It is probable that nothing can be added to the impressive and well-reasoned unanimous opinion in the *Matter of Brock* (245 App. Div. 5 [1935]), which opinion, however, is not referred to in the *Pawelek* case (*supra*). No authority was cited in support of the *Pawelek* statement that the power to *punish for contempt* is in the *court* and not in the *official referee,* and that only the

Special Term could hold one in contempt and fix punishment, and there is nothing in sections 759, 770 and 772 therein cited to that effect; nor is any reference made in that case to the very broad language of sections 115, 116 and 117.

It would seem that the fundamental purpose of the creation of the office of official referee, and the delegation to him of *judicial powers* by Supreme Court justices, was for the purpose of enabling the administration of justice to proceed more rapidly by having former members of this court, whose capacities were attested by their appointment, to continue to perform complete judicial functions, and relieve congested calendars of matters that ought to be sent to them if possible, so that the justices might be available for the business of reducing accumulated *trial* calendars. This approved construction, which the People and the Legislature and the last convention placed upon the pre-1938 actions of the Appellate Division in availing itself of the power previously given by the Legislature under sections 115–117 inclusive, and the pre-1938 interpretations of those sections by our Appellate Division, seems to warrant saying that the restriction applied in the *Pawelek* case (*supra*)' should not be applied if the language of the Judiciary Law would permit holding otherwise.

It seems obvious that the purpose of the sections was to authorize the Appellate Division to create these referees and give them, subject to the action of the justice at Trial or Special Term in referring matters to them, all the powers of the justice who had referred them. If, after the official referee has taken all the relative testimony, he must send it back to the justice who asked him to take it, for weighing, and the passing upon objections, and the translation of its meaning, and the application of its weight, the justice might much better have held the matter before him and saved duplication of work, and caused both counsel less trouble and expense. If there were any presumption that the official referee was less learned or experienced or qualified than the justice from whom the order came, perhaps something might be said in that direction, but the presumption is otherwise, because the Appellate Division has certified in his appointment to the continued possession by that referee of the very capacities that he was exercising up to the last moment of his term in the Supreme Court. It would seem that the natural and normal thing to expect the statute to authorize would be those acts which the *Brock* opinion (*supra*) has so convincingly discussed.

What intrinsic difference is there between any factual decision that an official referee will make and the decision that he will make in a discretionary matter? All of them are samples of the judicial process; they include application of the rules of evidence, the weighing of the quality and quantity of an alleged preponderance, and the application of his judicial conscience and judicial discretion in such cases as called for; the fixing of a fee, the setting aside of a contested service, the terms on which default might be opened, the granting or withholding of a matrimonial decree, are all examples of not merely the *taking of evidence* but of the operation of the judicial mind upon its meaning and value, and the formulation of an operative decision, in which the judicial mind, and conscience, and discretion would be called upon to co-operate.

That is the very fullness of the " judicial process ", and if it can ever be performed by the referee under an order of reference it is not easy to see where the line will be drawn as to what matters may not be sent to him to *determine,* unless there is specific language in the sections relative to contempt that forbids him to make a judicial decision therein.

There is no innate difference between the quality and nature of his decision that a plaintiff should be divorced than that a defendant who has not paid money that he should have paid should be made to wait in jail until he does pay it.

The " punishment " that the Penal Law fixes for crimes is not at all the punishment that the civil law or the Judiciary Law fixes for nonpayment of money. Whether one has insulted the court in its own presence by conduct or language, or has done a personal wrong to another in invading his property rights, the consequent *punishment* is not for the purpose of undoing a failure, or to produce performance of an act, *but to make one suffer for what wrong one has done in the past, which wrong cannot be undone by the payment of money.* The " punishment ", however, of a defaulting husband is not that kind of punishment, but merely a manner of enforcing payments by suspending his freedom until he pays; he may pay the next day and escape at once, so it is really improperly described as *punishment.* It ought to be described as enforcing the payment of money (just as an execution does so), or a mandatory injunction is enforced, by requiring one to be restrained of liberty until he performs an act.

It is not a quasi-criminal act to delay, or withhold or even to refuse, the payment of money, since there may be some explanation that, if not legal, is at least human; and whether or not

there is any *moral* quality in that act is not what is to be investigated. It seems unfair to narrow sections 115 to 117, inclusive in view of their past history, by giving to sections 759, 770 and 772 the construction of the *Pawelek* case (*supra*). True, a motion to " punish " for arrears of alimony must be initiated in Special Term but that is not similar to a provision that the proceeding must stay there.

The problem that arises in the present case is not one of contempt, but does involve the fundamental question of whether a referee may be asked to take factual proof and then *apply his judicial conscience and discretion* to the fixing of a *value upon work done*. That work is not in a class with that of the laborer or the mechanic, since a lawyer's work, abstractly worth $1,000, may not secure him a percentage of that because the value of the claim pressed, the circumstances surrounding the defendant, and various other special circumstances enter into the fixing of a fee. It is essentially the kind of decision that the judicial conscience and discretion must be employed upon.

It seems, therefore, that insofar as the fundamental test of what may be sent to an official referee was considered in the *Pawelek* case (*supra*), Justices in this department are well warranted in finding in the *Brock* opinion (*supra*), with which Presiding Justice LAZANSKY, and Justices CARSWELL, YOUNG, TOMPKINS and JOHNSTON concurred, a complete answer to any doubt that might arise.

It might also be pointed out that if any act of a justice can vest the official referee with the power or duty to exercise the judicial process, and it is in terms sent to him for the full exercise thereof, he ought to have the same power, as he has the same duty and obligation, that justices of this court are under when they are vested with, and begin to exercise the judicial process, they may not of their own motion suspend it but must, even to the point of mandamus, proceed to complete it (*Matter of Island Improvements, Inc.*, v. *May*, 231 App. Div. 837).

In *Davis* v. *Wiener* (260 App. Div. 127, 128 [4th Dept., 1940]) where the referee had been ordered to hear and determine, the Appellate Division overruled the objection that the order was void " because it constitutes an abridgement of the powers of the Supreme Court ", and said that " the holding[s] in *Matter of Brock* (245 App. Div. 5) are sufficient to dispose of this contention adversely to the appellants." In *Alexander's Dept. Stores* v. *Ohrbach's, Inc.* (269 App. Div. 321 [1st Dept.]) where the Referee had been ordered to hear and determine the court quoted from the *Brock* opinion, and decided the appeal in accord-

ance therewith, upholding the power of the Referee. In *Wallau* v. *Wallau* (270 App. Div. 954) the order to hear and determine was sustained, in this department, the court citing *Matter of Brock* (*supra*).

It is therefore referred to the Official Referee not only to take all necessary proof on the question of a proper fee but, in the exercise of his judicial conscience and his discretion, and in completion of the judicial process, to fix the amount which the husband should pay.